Good morning. My name is Louis Thompson. I represent Aaron Monroe in this matter. It's an issue of plain error, and I think preliminarily we have to decide if there was an error made by Judge Dever in this case, and I think the record speaks clearly that there was an error made in his computation of the mandatory minimum sentence in this matter. Would you make sure to address to all this last-minute flurry of presentation made by the government? Your Honor, as the filing by the government indicates, I did not receive a copy of the correspondence that was directed to Judge Dever. The letter does indicate that I had no objection to it. My very vague recollection is that the probation officer called and said that there was a mistake in the pre-sentence report based on the calculation of the mandatory minimum. That worked to my client's favor at that point. I said there was no objection based on the calculation going from 84 to 60 months. Judge Dever never addressed that correspondence, nor did he amend the pre-sentence report to reflect that misapprehension that was changed, of course, by the Aileen case. Then he proceeded to sentence Mr. Monroe in a manner that, at least to my thinking, expressed his either not having seen that memorandum, not having paid attention to it or disagreed with it, in that Judge Dever announced that he was going to sentence Mr. Monroe to 240 months on the underlying Count 1 and then 120 months on Count 2 and that they were to run concurrently. And then, having announced the 240 months, he gave Mr. Monroe 84 months on the Count 2 gun charge, which is, we contend, the incorrect mandatory minimum. Didn't he sentence him in the alternative? He said, if I made an error, I'd still do this. He did, Your Honor, but his alternative variant sentence, as he called it, said that he considered the 32, 35 issues and any misapprehensions of the guidelines. It would be our contention that if he, it wasn't a misapprehension of the guidelines, the guidelines state pretty clearly that the mandatory minimum is the appropriate guideline sentence. You're saying it's a constitutional error, not a guidelines error, isn't that it? That's right. And that if he, and because of it being a guideline range to 60 months, if he was going to vary or depart from that, he should have said that, not just express some consideration of the other sentencing factors. Well, assuming that's true, and to follow up on Judge Keenan's question about a constitutional error, this case was countered initially because it looked like a good case to set what is the standard of review for an Eileen case. So let's assume we get to that point. What should the standard of review be for an Eileen error? The standard of review in the context of a review of plain error, Judge? Well, I know plain error, but like, for example, constructive amendments are per se reversible in some circuits. Things like that could play into an Eileen issue. Or do you think it's just plain error analysis? I think it's plain error analysis. Without any other help? I think so, yeah. That would be opposition. That does raise the issue that I reflected on in preparing for this. We do concede it was plain error, but because of the way the sentence was crafted and the fact that there was no discussion as to which was the proper mandatory minimum, I'm not sure, and I'm not excusing what I didn't do, but I'm not sure when I would have objected to the misapprehension by the judge of what was the appropriate sentence because he really didn't announce it in terms of what was the mandatory minimum. And this does have an effect on Mr. Monroe because under the sentence as it now stands, he gets two more years than he possibly would have received if the 60 months had been utilized. We would concede that under the guideline range, he could have gotten up to 327 months, and he got 324. But again, I think Judge Dever should and is required to have accounted for why he entered that 84 months, and I would call the court's attention to his statement of reasons where he checked the box that said that there was a mandatory minimum sentence imposed, and that seems to indicate that he was under the misapprehension that the mandatory minimum was 84 and not 60. That would be my presentation unless the court has questions. Okay, sir. Thank you. Thank you, Judge. Thank you. Ms. Fritz, how does it come to pass that you find out about this just a couple days before our hearing today? Well, as I detailed in our letter, as I was reading through the sentencing transcript, there were certain things that just seemed odd about it. Yeah, but you've already written a brief in the case. Why all of a sudden do you do your due diligence three days before? All I can say is that initially upon looking at the sentencing hearing as well as the docket entries, there was no notation of this letter update to the court. As I was reading through the sentencing transcript, there were a lot of things that puzzled me. This was three and a half months after a lien had been decided. There was really no discussion during the sentencing hearing about the mandatory minimum. It seemed to be a non-issue. There's a brief reference by the government counsel to whether it's 60 or 84 months, you still have to use the career offender guideline table to determine his guideline range. And then before imposing and announcing the sentence itself, the court said, I appreciate the effect of delay on this case and the effect of the 924C and how I'm supposed to structure the sentence. And at that time I found myself thinking that the only effect the delay could have had from my reading was I lien. I wasn't sure what else had changed. Over a year had elapsed between the defendants pleading guilty and the sentencing itself. There were about six continuances for various reasons by the probation officer or by the defense attorneys in this case. And I was aware that in the past the probation office had, when significant cases had come down, such as Simmons or the Supreme Court decision in Dorsey and other matters, had done an update. So I just called the probation officer in an effort to put into context the district court's comment about the effect of delay. And in talking with him, he looked into his file and he said, I did prepare and provide the court this letter updating the PSR prior to sentencing. In light of that and the fact that this letter is part of the record, I wanted to bring this to the court's attention. Part of what record? The record on the piece? It is part of the district court record below. It was entered into the docket, so it would be part of what is considered the record. So we just pick up stuff from the record below when the record on the deal is filed here? Well, what is filed here, my understanding is the parties prepared the joint appendix, which is pooling the most relevant portions of the record. We're not moving to supplement the record in any way because this is a document that was filed with and before the district court. I guess what's troubling is, I understand your explanation, but it doesn't seem like there's anything in there to indicate it couldn't have been found before, or shouldn't have been found before this last minute. It seems, I mean, we get these cases all the time. I understand these things happen. You didn't try the case? No, I did not. That's the danger of these cases, when you don't try. I take it you did talk to the counsel who did? I did. I spoke with the AUSA. Didn't know anything about it? Didn't remember? Didn't bring it up? I spoke with the AUSA upon finding this. I specifically asked her, did she recall this? And I insisted that she go through. Upon finding this, but I think Judge Whitten's question is, did you talk with them when you were preparing your brief? Unfortunately, I was not the attorney who prepared this brief. I am not certain whether my colleague did speak with the AUSA. When I was assigned to treat every lawyer, it comes on this case, like, well, you're not responsible. Go check with the lawyer who was on this case before. You can change them up every day. So if someone replaces you, didn't do something, then we'll say, well, I didn't talk to the one that was here. I just prepared it from the record. That doesn't sound right, and I know. Don't answer, because I don't think you can fix that one. That can't happen. We're trying to avoid this happening again. And I know you've learned a lesson here. I'm sure there's a lesson. But probably it's a good idea to talk to the counsel who actually did the case and let them read your brief and say, what's missing here? They can kind of help out. They may not be able to write it as eloquently as you, but apparently they could try the case and then do what went on. So, I mean, there's something to be said there. Experts in appealing cases. I do appreciate the court's concern, and the timing is unfortunate. But at the same time, upon finding this, we were faced with a problem where we had confessed, we had said the district court erred. And we take pretty seriously, before we admit and we say, the district court committed an error and the error was plain. You had conceded that. We had conceded that. And upon receiving this letter. When did you concede it? Well, first of all, if this court were inclined to hold us to that concession, there's nothing that I can do about that. Did we hold you to what you say you conceded to? Yes. We did. We're not holding you to anything. You said it. Yes, we did concede it. That brief on the other side was written based upon your concession. Now you come back and say we don't concede. Now it's all changed up. Should we now let the other side go back and rewrite because you don't concede? How does that work?  No, and we don't make concessions lightly. You studied it, researched it, and thought it through real carefully before you did it. That's correct. Let's talk about the standard of review. Okay. Your opponent says it's a plain error. Some circuits say it's a harmless error. Others say that an Eileen error is a constructive amendment to the indictment and therefore, per se, requires re-sentencing. Where do you stand? In this particular case, because the defendant did not lodge any Eileen or Sixth Amendment-based objection. Well, first of all, from his argument, I don't think he ever knew about that letter. It went from the probation agent to the judge. And the record's not clear that the judge made any reference to that letter during sentencing. So how in the world is he supposed to know to make an objection? At that point, Eileen had been decided for over three and a half months. Defense counsel, who found themselves in a situation where an Eileen error would have benefited their client, they were making those objections. So in this situation, to the extent that the defense attorney believed that there was error and that that error was harmful to his client, he was obligated to raise that, present that to the district court, and permit the district court to rule on it. He did not do that here. So I absolutely believe that he needed to make this objection. And I would suggest that part of the reason no objection was made is that going into the sentencing, at least if one were to look at what the probation officer said, nobody disputed the revised calculations. Everybody was on the same page about the revised mandatory minimum and the modified. And the effect that that mandatory minimum had on the guidelines calculations, which inured to the defendant's benefit. So it would make complete sense for no objection to be lodged here. Well, you know, Ms. Fritz, what's striking me is I'm listening to this and listening to opposing counsel and trying to tell us about what happened or what didn't happen or what the court knew. Isn't the obvious solution just to send it back and have the court re-sentence? I mean, why wouldn't the government agree to that? I mean, you're part of the problem by conceding error. Isn't the most sensible thing to just say, Judge Debert, do it again? This is just too confusing. The person's constitutional rights are at issue. Just re-sentence. What's wrong with that? The problem with that is that the defendant has not met the plein air standard. It is a more rigorous standard, and he has the obligation of showing that his substantial rights were affected. We maintain that in this case his substantial rights were not affected. The court crafted what it believed was an appropriate sentence within the defendant's advisory guideline range. That sentence was 324 months. But this isn't just a guidelines error. This is a constitutional error. And Savion Matute dealt with guidelines calculations. This goes beyond just guidelines calculations. There's a constitutional error. I agree. But generally, even constitutional errors may be subject to a harmless error analysis. Or in this case, because the burden is on the defendant, he must show his substantial rights were affected. Right. But the burden goes up, doesn't it, on the government when there's a constitutional error? Don't you have to show it was harmless beyond a reasonable doubt? If the burden were on the government. But here the burden is not on the government. The defendant has the burden of persuading this court that there was an error that was plain, that affected his substantial rights, and that this court should exercise its discretion to notice. Our position is that he can't make that showing. And the reason we believe that, again, it did not affect the guideline range. The court, in sentencing the defendant, selected an aggregate sentence here. The court said, I'm not going to go as high as government counsel would like, which was the top of the guideline range. I'm going to go a little bit less than that. He imposed a sentence of 200, I'm sorry, 324 months, which was about three months less than the top of the advisory guideline range. The court noted that it was familiar with how, in a career offender context with a 924C count, how it was supposed to craft that sentence, by apportioning the sentence between the relevant convictions. Unlike some of the other cases where a case has been remanded on the belief that the defendant could show a violation of his substantial rights, this is not a case where the court could not have imposed a lesser sentence. The court sentenced him to 324 months. Assuming it were error, and that it imposed the 84-month sentence on count 2 in error, the court was still able to exercise its discretion and impose a lesser sentence, because it had the flexibility with counts 1 and 3. I think this gets back to the question of our review here. If there's a constitutional error, isn't that more serious than simply a guidelines calculation error in which the court could have sentenced the person within that realm? If the Constitution imposes certain requirements and they aren't met, why isn't that a more serious consideration that we have to account for? I appreciate the distinction that the court's drawing between a guidelines mistake and a constitutional error. But at the same time, the defendant has to show that it affected his substantial rights. Here, the defendant speculates that, well, maybe I would have gotten 60 months. But under the circumstances of this case, which is a little bit atypical, typically, you do have a particular guideline range for a count. More often, when it's not a career offender context, the 924C guideline range is the mandatory minimum. And in that circumstance where it's far easier to say the court imposed the 7 years because it had to, it believed it had to. Here, though, the court had the ability to fashion an overall sentence that it believed was appropriate. And I think that this court needs to give credence to the district court's explanation that I've thoroughly considered the Rule 3553A factors. He discussed at length the defendant individually in the context of this case, this crime, what the court believed were aggravating factors, what were mitigating factors. And at the end of the day, the court said, I believe that this sentence, 324 months, is the appropriate sentence for the defendant under the 3553A factors. Give me your take at JA 103 about the judgment statement of reasons stating that a mandatory sentence was imposed. Does that indicate the judge thought the mandatory minimum was 7 years rather than 5, notwithstanding that letter from the probation agent? No. If you look at that section of the statement of reasons, it's titled, I believe, mandatory minimum sentence. There are three options. First, there was no mandatory minimum. Second, the mandatory minimum was imposed. Third, there was a mandatory minimum, but the sentence is below the mandatory minimum. Specify the reasons. So anytime the mandatory minimum or higher is imposed, the court is going to check that box. There's no place on that form, unfortunately, which would perhaps be better for the court to specify, this is what I believe the mandatory minimum is. So in this circumstance, him checking, the court checking that box, simply acknowledges that the court imposed a sentence at or above the mandatory minimum applicable to the case. So that doesn't help the defendant in the way I believe that the defendant believes it does, just based on the specific options that the court has provided. I would like to talk briefly about the fourth prong of the plain error test, which is this court does have discretion whether or not to recognize the error. If this court found that there was an error, we would argue that this court can exercise its discretion not to notice this error. There was no dispute that a firearm was brandished in this case. The defendant admitted that. He admitted that by failing to object to the offense conduct that was laid out in the PSR. Here, the court emphasized the appropriateness of the 324-month sentence. In this case also, the defendant pleaded guilty, fully believing he was subject to a seven-year sentence, seven-year mandatory minimum. So this is not a situation where the defendant was unaware of what he was pleading guilty to. I think that the record does suggest, in light of this letter. Well, is your argument going that the evidence was so overwhelming that no reasonable jury could have found otherwise, or is it on the basis of aiding and abetting or conspiracy because the young lady said both had a gun, so that means somebody had a gun even though one of them might have been a BB gun? One was a BB gun and one was an actual firearm as defined by statute. If this were a case that had gone to trial, I would perhaps be arguing that the evidence was so overwhelming that had the jury been instructed to find this element, it would have done so. And in cases such as that, this circuit as well as other circuits have found that the error did not affect substantial rights or that it would not be recognized under those circumstances. Wasn't it in an unpublished opinion we did it? Was that it or was there some other means we did that to say that overwhelming evidence is sufficiently overcome where an element is not specifically found? I know that at least in one unpublished opinion in a 924C context. I'm not sure if it's in the context of a 924C, but I didn't survey all of the harmless error jury instruction. That's messy, isn't it? Trying to figure out when the evidence is overwhelming and not all these things. I mean, isn't that kind of reaching to some extent? I mean, where have we got? Just give the element. Well, in this case, though, the defendant did not challenge the recitation of the offense conduct. During the Rule 11, it was also referenced that this was a gunpoint robbery. Whether under a direct theory that the defendant was holding the firearm or under an aiding and abetting theory, the elements of Roseman that are satisfied here. So at a minimum, the defendant aided and abetted his father's brandishing of the firearm. So this isn't a situation where there's some unfairness or the perception of the judiciary would be compromised because there is no dispute. Under these circumstances, a firearm was brandished either by the defendant or his father, and the court provided a very robust discussion of why it believed this sentence was appropriate. And given that robust sentence, the robust discussion, as well as the court's announcement that this was the sentence it thought that it would impose regardless of the guideline range just based on the 3553A factors as an alternative sentence, this is a situation where we would urge the court not to exercise its discretion to recognize any error. And if there are no further questions from the panel, I ask that you affirm the judgment of the district court. Thank you. Judge Floyd, your reading of the Statement of Reasons, I think, is troublesome or correct and troublesome for the government because it says a mandatory minimum sentence was imposed. It didn't say might have been. It says was imposed. And if the court is going to hold the government to its concession that there was an error, and I think this could be seen as a constitutional error in having the judge find the fact of brandishment in this case. And Mr. Monroe did not plead to brandishment. The indictment said used. It did not include the second level of the description of the 84 mandatory minimum. And I think with the problem with the indictment and Judge Devers' silence on what he did with regards to the mandatory minimum, I think this court should send the case back to Judge Devers and let him explain what he did and why. Thank you. All right, sir. Thank you. We'll come down to Greek Council and then we'll take a brief break.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Henry F. Floyd